UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAWN N. SPUHLER,

    Plaintiff,

Case No. 2:13-cv-12272

v.

HONORABLE STEPHEN J. MURPHY, III

CAROLYN W. COLVIN, Commissioner
of Social Security,

    Defendant.
                                         /

**ORDER DENYING SPUHLER'S SUMMARY JUDGMENT MOTION**
(document no. 10), **GRANTING THE COMMISSIONER'S SUMMARY JUDGMENT MOTION** (document no. 12), **ADOPTING MAGISTRATE'S REPORT <u>AND RECOMMENDATION IN PART</u>**(document no. 14)**, AND DISMISSING CASE**

Dawn Spuhler filed a claim for social security insurance benefits under Title II of the Social Security Act. 42 U.S.C. § 401 *et seq.* (2014). The Administrative Law Judge denied her petition. Spuhler's administrative appeal was also denied, making the agency's determination final. Spuhler appealed the entire decision to the district court under 42 U.S.C. § 405(g), and both parties filed motions for summary judgment. The Court referred the case to a magistrate judge. The magistrate judge issued a Report and Recommendation recommending that Spuhler's case be dismissed. Spuhler filed several objections. The Court has studied the magistrate's report, read the briefs, and will dismiss the case.

**BACKGROUND**

I.    <u>Underlying Facts About Spuhler's Depression And Anxiety</u>

Dawn Spuhler was a forty five year old woman at the time of the last administrative hearing. She worked for the United States Postal Service for nearly 25 years. She is married and has three children. Starting in 2006, Dr. Junaid Ghadai began treating Spuhler

for depression and anxiety. He saw her once every other week through 2011. Tr., ECF No. 7, at 264–68, 344–65. His medical notes consistently state that she was depressed and anxious. And he placed her on an extensive list of medications, including Celexa, Requip, Panax, Effexor XR, Lexapro, Ambien, Restoril, Rozerem, and Seroquel. *Id.* at 305.

In May of 2010 her psychological situation deteriorated. At work her boss berated her and, eventually, the Postal Service eliminated her part-time position, stating that it could not accommodate her physical limitations.[1] *Id.* at 41. The next day, she told Dr. Ghadai that she wanted to commit suicide. *Id.* at 269. He put her into an inpatient treatment program at Oakwood Heritage Hospital, where she stayed for almost two weeks.

She left the hospital once insurance would no longer pay for her stay. *Id.* at 44. After leaving the hospital, she rarely left her house, sometimes staying inside four to five days per week. *Id.* at 55. Normally, she would sleep until eleven o'clock and nap throughout the day. *Id.* at 51–52. She also testified that she would have panic attacks around people, sometimes as often as three times per week. *Id.* at 56. Spuhler then applied for disability benefits.

II.  The Administrative Law Judge's Determination

The ALJ issued a written opinion denying Spuhler's application for disability benefits. He applied the five step sequential analysis required by Social Security Administration regulations. *See* 20 C.F.R. § 416.905(a). First, he found that she was not currently engaging in substantial gainful employment. Second, he determined that she had several

---

[1] In addition to suffering from depression and anxiety, Spuhler had foot and hip pain that limited the amount and type of work that she could do at the Post Office. The ALJ's findings regarding her physical limitations were not appealed.

2

severe impairments, including obesity, anxiety, and depression. Third, he found that none of her limitations qualified as a listed impairment.

Before moving on to step four, he determined her residual functional capacity ("RFC"), an assessment of her remaining capacity for work once her limitations have been taken into account. *Howard v. Comm. of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002). The ALJ began by noting that Dr. Ghadai had submitted a psychiatric narrative report detailing Spuhler's treatment history. The report stated that he was treating her for depression and anxiety. She complained of feelings "of depression, worthlessness, helplessness, and hopelessness." Tr., ECF No. 7, at 28, 305. According to Dr. Ghadai, she "experiences excessive worries, lack of interest and lack of energy, and inability to concentrate." *Id.* at 305. He also assigned her a current Global Assessment of Function (GAF) score of 35, which indicates major impairment in areas such as work, school, family relations, judgment, thinking, or mood. *Id.* at 306.

The ALJ gave the GAF score little weight. He noted that Dr. Ghadai's treatment notes stated that she "was cooperative, had good eye contact, was oriented times three, fair insight, and grossly intact memory." *Id.* at 28. Furthermore, Dr. Ghadai's psychiatric narrative stated that she was sleeping well and that she thought her medications were working. *Id.* at 28, 305. Furthermore, she had neither suicidal nor manic tendencies. *Id.* He also stated that her "daily living activities and level of social functioning do not support the low GAF assessment." *Id.* He noted that while she has problems around people, "she spends time with her family, goes to the casino, grocery shops, and goes to the amusement park or zoo." *Id.* at 29, 178. Finally, he stated that Spuhler "had improvement in her mental health symptoms through psychotherapy and medication management." *Id.*

After examining the record, the ALJ found that she had the mental capacity to do "simple, routine, and repetitive tasks" in "a work environment free of fast paced production requirements" that involved only simple decisions and few workplace changes. *Id.* at 25. It further found that she should "have no interaction with the public" and "only occasional interaction with coworkers, but no tandem tasks." *Id.* He stated that the RFC was consistent with many of her described limitations.

Having found that she had the capacity to do only simple, routine tasks in a low stress environment, the ALJ determined that she could not continue with her previous work at the post office. *Id.* at 29. Nonetheless, he found that there were a substantial number of jobs in the national economy that she was capable of performing. He therefore denied her application.

## STANDARD OF REVIEW

A claimant may appeal a Social Security Administration decision to a United States district court. 42 U.S.C. § 405(g). The district court's review, however, "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Grayheart v. Comm. of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013) (citations omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citations omitted). A reviewing court will affirm the Commissioner's decision "if it is based on substantial evidence, even if substantial evidence would also have supported the opposite conclusion. *Id.* (citations omitted). Nonetheless, an "ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based on the record." *Id.* (citations omitted).

**DISCUSSION**

This case presents two questions. First, did the ALJ appropriately evaluate Dr. Ghadai's narrative report, and especially the GAF score? Second, if the ALJ appropriately devalued the GAF score, was there other substantial evidence justifying his RFC determination?

The Court finds the ALJ correctly evaluated the narrative report. In particular, the GAF score, standing alone, does not constitute a treating source opinion. Thus, it does not fall within the treating source rule. Furthermore, other substantial evidence in the record supported the RFC decision. Accordingly, the Court will dismiss the case.

I. The Treating Source Rule Does Not Apply Because
   The GAF Score Is Not An Opinion Entitled To Deference

Spuhler argues that the ALJ failed to properly apply the treating source rule. Social Security regulations state that when "a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the Commissioner] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2).

The Commissioner argues that Dr. Ghadai never submitted an actual opinion. The Court agrees that Dr. Ghadai's narrative report is short on concrete limitations. It states that Spuhler has depression and anxiety. But the closest thing the narrative report contains to a limitation is the assertion that Spuhler has an "inability to concentrate." Tr., ECF No. 7, at 305. Moreover, it is not clear if this is Dr. Ghadai's conclusion or merely a report of Spuhler's complaints.

The narrative report also gives her a GAF score of 35. But a GAF score is a generalized assessment that notes some major impairment in work, school, family relations, judgment, thinking, or mood. Without more, it does not help the ALJ articulate specific limitations on her ability to work. As both the magistrate and the Commissioner point out, courts consistently devalue GAF scores that are inconsistent with other evidence. *See* Report, ECF No. 14, at 29; Def.'s Resp., ECF No. 16, at 4. The Sixth Circuit has concluded that a "GAF score is not particularly helpful by itself." *Oliver v. Comm. of Soc. Sec.*, 415 F. App'x 681, 684 (6th Cir. 2011). Similarly, the Regulations put little weight on the score. *See* 65 C.F.R. 50746, 50764–65 ("[GAF Score] does not have a direct correlation to the severity requirements in our mental disorders listing."). Indeed, the Court has been unable to locate a single case stating that a GAF score, by itself, constitutes a treating source opinion entitled to deference.

Furthermore, an "ALJ is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria." *Buxton v. Halter,* 246 F.3d 762, 773 (6th Cir. 2001) (citations omitted). The Sixth Circuit has criticized GAF scores for being a "subjective determination." *Oliver,* 415 F. App'x at 684. That critique is especially pertinent when, as here, the doctor did not provide any objective criteria justifying the low score. Indeed, Dr. Ghadai gave Spuhler a GAF score of 35, yet he did not explain why that score was appropriate, or how that score might translate into specific limitations. Instead, it is unsupported. And generalized, unsubstantiated evidence is not an opinion entitled to controlling weight.

II.     The ALJ's Determination Is Supported By Substantial Evidence

The ALJ determined that Spuhler had the mental capacity to do "simple, routine, and repetitive tasks" in "a work environment free of fast paced production requirements" that involved only simple decisions and few workplace changes. Tr. ECF No. 7, at 25. It further found that she should "have no interaction with the public" and "only occasional interaction with coworkers, but no tandem tasks." *Id.* As the ALJ explained, these limitations account for many of Spuhler's symptoms of depression and anxiety. The question is whether the ALJ articulated sufficient reasons justifying that residual functional capacity.

Dr. Ghadai's narrative report provided evidence supporting the ALJ's determination. Dr. Ghadai stated that Spuhler "did not have suicidal or homicidal ideas." *Id.* at 305. Nor did she have "symptoms suggestive of mania, hypomania, or psychosis." *Id.* Her sleep has improved due to medication, and she "believes that the meds she is on are helping her." *Id.* The ALJ noted each of these findings in it opinion. *Id.* at 28.

Furthermore, his RFC determination accounted for Spuhler's own description of her limitations. She stated that she had difficulty remembering things, and that she became anxious around people she did not know. She was able to cook for her family, do light chores, and shop each week. *Id.* at 175–77. To be sure, these statements are consistent with a person that has severe limitations. Yet, the ALJ stated that he took the "claimant's alleged symptoms into consideration and limited the claimant to simply work, with no interaction with the public; only occasional interaction with coworkers, and no tandem tasks." *Id.* at 29. Thus, his RFC determination accounted for many of Spuhler's psychological limitations.[2]

---

[2] While the magistrate judge makes some reliance on Dr. Ghadai's handwritten notes about eye contact and other matters, the Court is not prepared to second-guess Dr.

7

Spuhler contends that, in the absence of any medical opinion on the record, the ALJ could not determine her RFC. Social Security Regulations provide that "[i]f any of the evidence in your case record, including any medical opinion(s), is inconsistent, we will weigh the relevant evidence and see whether we can determine whether you are disable based on the evidence we have." 20 C.F.R. § 416.920b(b). This regulation allows the ALJ to weigh all of the evidence when no medical opinion is given controlling weight.

For example, in *Her v. Comm. of Soc. Sec.*, 203 F.3d 388 (6th Cir. 1999), the plaintiff complained of depression and hallucinations. In support, she proffered the opinion of one doctor that stated she was depressed and suffered from a GAF score of 25–30. *Id.* at 390. The ALJ determined that the opinion was not credible, and that Her could perform light unskilled work. On appeal, Her argued that once the ALJ discarded the only medical opinion, he could not determine Her's residual functional capacity. The Court rejected this argument, stating "it is not unfair to require the claimant to prove the extent of his impairments." *Id.* at 391. It therefore "reject[ed] plaintiff's contention that once the burden of proof shifts to the Commissioner at step five, the Commissioner is then required to prove a claimant's Residual Functional Capacity." *Id.* The Court concluded by finding that the ALJ had substantial evidence to support his determination.

---

Ghadai's determination merely because Spuhler made good eye contact or spoke in coherent sentences. The Court does not know whether if it is inconsistent for a person with depression to make eye contact with their psychologist, and the issue is one example of why the regulations put stock in the competence of medical professionals. But, as demonstrated *infra*, even ignoring the treatment notes, there is substantial evidence supporting the ALJ's residual functional capacity determination.

8

The same principles apply here. Spuhler had the burden to demonstrate what she was capable or not capable of doing. Yet, the record lacks any psychological opinion detailing her limitations. As in *Her,* the ALJ was justified in examining all of the evidence and determining Spuhler's capacity, notwithstanding the absence of a conclusive medical opinion.

Finally, Spuhler argues the ALJ should have ordered a psychiatric evaluation. The Regulations provide discretion for an ALJ to order additional tests if, "after weighing the evidence we determine we cannot reach a conclusion about whether you are disabled." 20 C.F.R. § 416.920b(c). There is no mandate, however, that the ALJ order additional testing if the evidence is sufficient to make a disability determination. As explained above, the ALJ's determination that Spuhler could work in a setting with little stimulation or interpersonal contact was supported by the evidence. Thus, no additional testing was required.

## CONCLUSION

The Court determines that the GAF score, standing alone, was not an "opinion" sufficient to trigger the treating source rule. The Court further finds the capacity determination to be supported by substantial evidence in the record.

### ORDER

**WHEREFORE**, it is hereby **ORDERED** that the Commissioner's Summary Judgment Motion (document no. 12) is **GRANTED** and the case **DISMISSED**.

**IT IS FURTHER ORDERED** that Spuhler's summary judgment motion (document no. 10) is **DENIED.**

**IT IS FURTHER ORDERED** that the Court **ADOPTS IN PART** the magistrate's report and recommendation (document no. 14).

**SO ORDERED**.

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: September 30, 2014

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on September 30, 2014, by electronic and/or ordinary mail.

s/Carol Cohron
Case Manager